and he's the court from August of this year on behalf of the College of Engineering. This case is about the prosecution repeatedly and reportedly introducing false evidence of organ injury and reporting 16 repairings and misdemeanor functions. The case is called the Prosecutor's Fair to Correct. So, the prosecutor previously visited that same test facility and during the first session of the grand jury, he was seen in the second session of the grand jury, and the same issue of false evidence of organ injury and reporting 16 repairings and misdemeanor functions. And then in the third session, the question was posed by the grand jury, too, and this is the reprobation factor. So, in this case, he was reported to the prosecutor repeatedly for misrepresenting and instead visited the same false testimony which was the main factor. He did not want the issue to be there. He received no benefit for his testimony. He would have received no benefit for his testimony. Then, he received a response, and the prosecutor knew this was a rather incorrect record, and he repeated the evidence of his testimony over and over again. So, he was held across the side of the grand jury. That is, they took this case to something else. He's on the other side of the grand jury. It's sort of moved from the side of the grand jury to the other side of the grand jury. The Supreme Court has only recognized structural error in such infringers, but with the Supreme Court's language-based jurisdiction, there's a category of errors which undermine the fundamental fairness of the grand jury proceedings. We're asking the court to find the de-investigated independence of the grand jury, as in that category. It seems to me that there are two cases that are hard for you to reconcile. There's the Supreme Court's decision to keep him, and then there's our decision to honor him. It's hard for me to put those two cases together. Okay. Now that there is no structural error in a violation of, I believe, a technical violation of the rules of the game, there are two witnesses which describe some of these things, Supreme Court said, that will impair the most of the fundamental fairness of these proceedings. In Britain, of course, considering a different question than we should, in Britain, of course, considering a free trial motion to dismiss an infringer, in the context, of course, that one of the tests that we're going to apply here, the source of the test that we're going to apply here, is the test of region A, which was the justice on Connors, and the decree that he gave to the Supreme Court. And I'll let the investigation determine whether he should report it to me, because that was the region that I came from, and I'm pretty much familiar with it. It would be possible you came on campus to understand how it starts with error. This type of error on the basis of the prosecution is one that undermines the investigative independence of the grand jury, and that's fundamental to the investigation of the grand jury. The grand jury certifies that Mr. Connors, who has covered all the interviews, chose the conviction according to the contrary scope of evidence, and why I believe the jury was dishonest. Why? Because she did not choose her son. She chose her son because she knew there was no harm at all. Mr. Sharp, I would say that there's no harm in one thing. It's the basis that illustrates our error in this case, is that the question is not whether there's harm to the defendants, the question is whether there's harm to the system as a whole. In the instance of, for example, biased selection of a grand jury, it's conceivable that one could look at all the evidence that was produced in the grand jury and find, objectively speaking, that it's not for a probable cause, but the Supreme Court said we don't do that, because the way that the grand jurors are selected and have been drawn going through a cross-section of the society is fundamental to the functions of the grand jury. So we don't want to see one of those registered individuals. I think we'd like to see one of those doing their job in the institution and during the process. I agree. The Supreme Court is not a serious probability, but it is the case that the error of the grand jury is to be done in a way that makes it impossible for us to say that it's not to say that the prosecutor jury uses false evidence in order to demonstrate that this is a real misconduct or a real mistake. The effect of the error on the grand jury is to be done. In the case of the Robbins-Harris-Hicks murder, in this case, the prosecutor's role is to sit in the question of whether the perpetrator sees something that's critical for the grand jury, and if there's not a false issue, then this is something that the prosecutor should meet that's not a failure of the system. In the grand jury, the prosecutor is the only one there who can ensure that the grand jury's agents meet as well. There's no such person that's unrepresentative of the defendant. The prosecutor is no more enormous amount of power in that setting than enormous amount of discretion. And for a prosecutor to use that power and discretion to present false evidence to the grand jury is a damage that goes to the structure of the system that was established in the case before to the facts of the individual case. MR. KAULINER. Are you arguing that the judge's argument is different than the moral arguments in the moral rule? MR. SCHROEDER. The moral rules in some cases do not keep in check with the social error. The moral claims in the particular case are there to issue constitutional authority over the defendant. MR. KAULINER. Is it elsewhere upon the prosecutor's ability to show a substantial piece of evidence to the grand jury that's less than a moral argument? MR. SCHROEDER. We don't see it there. We're not arguing that there are more than some of the jury evidence in the case. The prosecutor has the right to say, I don't think through C are relevant to this case unless we present A through N. Now, the prosecutor has no duty to present a scope of evidence once the prosecutor has specifically asked by the grand jury and the grand jury to meet its investigative obligations about item 2. The prosecutor can't present false evidence in response to that question. It's a different question than a person whose scope of evidence is commercial and can't specifically present false evidence. So what we're asking the court to find is that there's social error when the grand jury's investigating function is interpreted by the prosecutor's ability to present false evidence. We also have a Brady claim that we suggest that the briefings that have other questions on that measure are not specific to the University of New Orleans. That's a lot of evidence. That's a lot of evidence. But basically, this case is a squaring-off test between two instances on the one hand, as far as Mr. McPherson, who's said that the state court defendants have done suspicious evidence, and two instances on the other hand, the state court defendants, one of whom is Ms. Bryant's client, who said that they did. And the jury knew that both of them were under cooperating obligations and had different values. But the condition that one of them was absent and she appeared to be informed of this significantly increased the case's evidence. And so we're going to be taking $2,000 today in a different incision to continue providing damaging evidence for the defendant. And significantly increase the amount of $6,000 in this grand jury. And I think it's reasonably probable that that goes into the household of the jury. Some instances, some cases, you've said, that the defendant didn't do anything. It's just, if you call the witness, you're going to tell them that the client didn't do anything. It's just a choice. Well, the circuit of justice in this case is that the witness is actually suspicious and exposes the prosecution to misandry, allegations, and triggering. And that's what happened here. So we're going to get to the top of the case in a moment. That's great. Thank you very much. Thank you. Thank you. This is a case of a search of the same patient that's on the front page of the jury. The search warrant does not apply to this particular woman or this particular case. It's actually the first time I've seen that. And I think that this is a terrible crime. I think somebody has a bad name right here. That's the lady on the right. She's accused of the molestation of our most famous person, who was walking out there. And the jury has changed itself such a way in the context of this case. So the jury has changed its law in regards to her changing her own name. That's a terrible crime. That's a terrible crime. I think that it's a great thing that the jury is able to do that. I think that's one of the things that actually encourages the jury to do, is to find a person whose name was actually on the front page of the jury. That's a terrible crime. That's a terrible crime. One of the issues here was that there was a text bar in front of her. And there may be text information in the back of the file. So we're going to look at this. And we're going to read a section of oral conscience that we're going to read on. And it's a little ancient. It's a little great. But I'll read it. We read that this court issued a fine of $1,000 in these issues. And it's a fine of $1,000. And that's not going to be a corporation correction. It's going to be a state one. And it's not going to be a state one. That's not going to be a state one. That's a fine of $1,000 in a state one at $500. Another thing we're going to read is the statute of Miss Brinton. And we also see that this court sorta has two fine lines, here on the front of this issue. The state one, or an Ahora Español, has issued a fine of $100,000. And the statute of Miss Brinton has issued a fine of $100,000. And the state one, or an Ahora Español, has issued a fine of $100,000.   has issued a fine of $100,000. These issues are important here. It's not that I read it. They're going to change the universe after. And I'm not going to turn several people away from this trial, in which all of these issues are explored. But this court is not going to do that. And it's not going to change the universe in the state that we're in now. It's going to change the world. It's going to change this whole office. It's going to change this whole country. We're going to turn to the insurance. And we're going to turn to the state one. We're going to turn to the state one. There's a question...
judges: Wallace, D.W. Nelson, Owens